UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TAMARA D. MOORE** | **CIVIL ACTION** |
| **VERSUS** | **NO:   18-12270 c/w**<br>**19-2281, 19-11420, and**<br>**20-2819** |
| **LOUIS DEJOY, POSTMASTER GENERAL, UNITED STATES POSTAL SERVICE** | **SECTION: "KWR"** |

## ORDER

Before the Court is a **Partial Motion for Summary Judgment (R. Doc. 54)** filed by the Defendant, Louis DeJoy, Postmaster General[1], United States Postal Service, seeking an order dismissing plaintiff's personal injury claims and dismissing all claims related to plaintiff's fifth EEO charge. R. Doc. 54. Plaintiff, Tamara D. Moore, filed a response to this motion. R. Doc. 62. Defendant submitted a reply to Plaintiff's opposition. R. Doc. 80.

**I.      Background**

This matter arises out of Plaintiff, Tamara Moore's ("Moore") employment as a letter carrier at the Gretna Post Office. R. Doc. 1. On May 5, 2014 Moore was injured while delivering mail. Her injuries included compression fractures to the lumbar and thoracic regions of her spine and four herniated disks. *Id.* After sustaining these injuries Moore was released from duty. On August 19, 2014 Moore was released to full duty by her physician. *Id.* Upon her return to work, she was placed on Modified Assignment (Limited Duty)[2] and worked from 7:30 a.m. – 11:30 a.m. until May 1, 2017, when her supervisor changed her schedule. *Id.* Moore generally alleges that

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Louis DeJoy as the current Postmaster General has been substituted for Megan J. Brennan as the defendant in this suit

[2] 546. 141: Limited duty assignments are provided to employees during the recovery process when the effects of the injury are considered temporary. USPS Employee and Labor Relations Manual: 546 Reassignment or Reemployment of Employees Injured on Duty (February 11, 2022) https://about.usps.com/manuals/elm/html/elmc5_034.htm

she was subject to discrimination and harassment because of her disability, and that her supervisors failed to accommodate her disability in the workplace by letting her keep the original schedule rather than requiring her to work from 10:00 a.m. to 2:00 pm. *Id.* Moore filed several EEO charges. After completing the administrative phases, she filed multiple cases which were consolidated.

### A. First Complaint Events

In the original lawsuit, Moore names as defendants the Postmaster General Megan J. Brennan, Acting Postmaster of the Gretna Post Office Juana Richardson, and her supervisor Shirley Clarke. Moore complained that the defendants failed to accommodate her disability, subjected her to unequal treatment and conditions of employment, and violated contractual provisions of JCAM and ELM (contracts governing USPS). R. Doc. 1. In an exhibit attachment to the first complaint, Moore complains that she received a revised Offer of Modified Assignment from the Officer in Charge at the time, Juana Richardson ("Richardson"), that changed her schedule contrary to her treating physicians' opinion regarding the appropriate schedule. She also complained that Richardson had no medical training or background to make the decision to change her schedule in an effort to "rehabilitate her."

On May 26, 2017, Moore appealed Richardson's decision to Joseph Porche ("Porche"), the former Manager of Post Office Operations. R. Doc. 1-2. Moore considered the schedule change as not being a reasonable accommodation. Further she argues that there was no showing that keeping her at the original schedule would pose and undue hardship on her employer. *Id*. Moore further alleged that the Post Office violated the JCAM contract, a contract between the Postal Service and the National Letter Carriers Association, because they are contractually obligated to allow her to begin work at the start of her shift. Richardson, according to Moore, refused to restore her to her original work schedule, it was furthered noted that Moore did not

2

submit her medication to Richardson for her to determine whether she had to take it at a specific time. *Id.* at p. 4.  In lieu of submitting her medication information, Moore submitted three (3) doctors' notes which indicated that she needed to be restored to her original work hours because the new schedule affected the timing of her medication.

Moore also alleges that she was never told that she could contest a revised Offer of Modified Assignment and that Richardson told her that refusing to sign the offer was the equivalent of forfeiting the offer.  Moore thereafter relented and accepted the job offer albeit under duress. *Id*. at p. 5.

Moore specifically alleged that from May 1, 2017 to June 6, 2017 she was forced to work in a constant state of physical and mental angst due to the unwarranted, unlawful, and non-contractual change to her schedule. Moore alleges that three years after her initial injury she experienced a recurrence on June 6, 2017 and that she was medically excused from duty on June 7, 2017.  *Id.* at p. 4.  Moore was issued a right to sue letter on September 8, 2018. *Id.* Moore alleges that she is seeking $204, 910.94 for compensatory damages in addition to lost wages.

### B. Second Complaint Events

Moore filed a second EEO charge in January 2018. In that charge she alleges that she was subject to harassment by Postmaster Dwayne Pressley ("Pressley") as a result of her physical disability. According to the exhibit documents attached to the second complaint Moore was released to full duty on January 4, 2018 without restrictions. However, during the investigatory interview with Pressley, she complained that the physician that released her to full duty was not her regular attending physician of record.  19-02281, R. Doc. 1-3, p. 12.  According to Moore she received notice that the agency's physician released her without restriction to return to work.  *Id.* at p. 37.  Moore filed a grievance letter where she indicated that she visited the physician for the dispensing of a shot for pain. He then released Moore to full duty without restriction contrary to

her doctor's reports, MRI, her present physical condition, and without conducting an examination. *Id*.

Moore indicates that on January 9, 2018, she telephoned the Enterprise Resource Management System (eRMS) to request 160 hours of OWCP-LWOP (Office of Worker's Compensation, the Louisiana Workers Office) in lieu of her IOD. *Id*. In response to being released to full duty, Moore sought a medical note from her attending doctor who, on Wednesday, January 10, 2018, concluded that she was not released to full duty.

According to Pressley, despite having been released to full duty, Moore did not report to work from January 18, 2018 thru January 31, 2018 which prompted an investigation by Pressley. During the investigation, Moore was presented a series of questions. During the interview Moore refused to acknowledge that she understood that by failing to call into the eRMS system her absence is considered AWOL and that disciplinary action, up to removal from the Postal Service, could be taken against her. *Id*. at p. 13. She did not recall receiving documentation from HR about the Postal Service policies regarding unscheduled leave or AWOL and that she needed to provide documentation after being out for more than three days. *Id*. She also declined to acknowledge that being AWOL was a serious charge.

At this time Moore acknowledged that she did not have an approved FMLA case on file but that she received and EAP in 2016. *Id*. She further acknowledge that she has been to EAP several times but indicated that she was not aware that she could get an extension of her original FMLA because her requests for extension were denied because she did not have enough work hours per HR in Greensboro, N.C. *Id*.

Pressley questioned Moore about whether she had called the Office of Worker's Compensation, the Louisiana Workers Office, or the IOD for all unscheduled leave for the period

4

she had been out of work. Rather than answer, she responded that she did not know how to answer the question. *Id*.

At the conclusion of the investigation, Pressley communicated his expectations to Moore as follows: (1) Moore was to turn all medical documentation into injury compensation; (2) call into the eRMS systems to request any unscheduled leave; and (3) get a CA-17 form from the office to be filled out by Postal management when she has to go to the doctor for her to turn back into injury compensation to update her file. *Id*. at p. 15.

On January 18, 2018, Moore received a letter from Pressley indicating she would be relinquishing her bid assignment because she failed to turn in medical documents indicating that she would be able to fulfill the requirements of her bid assignment within the next 6 months. *Id*. at p. 15. The letter contained the policy for limited duty letter carriers' ability to bid for a job while on light or limited duty. *Id*.

The dispute about Moore's absence continued through December 2018 when a final agency decision was rendered. Moore alleges that she is entitled to $200,000 in compensatory and punitive damages because she was forced to work in violation of labor laws.

Moore alleges that as a result of the culture of discrimination she was forced to work in pain, experienced stress, high anxiety, depression, hair loss, sleep deprivation, compulsive over eating that caused an increase in her blood pressure, borderline diabetes, and an enlarged heart which increased her risk for heart disease.

In March 2019, Moore filed her second lawsuit naming Postmaster of the Gretna Post Office Dwayne Pressley and Postmaster General Megan J. Brennan as defendants. *Id*. at p. 1. This complaint was regarding the events beginning in January 2018 through March 12, 2019 as detailed above.

   C. **Third Complaint**

Moore's third complaint Civ. Action 19-11420, filed by counsel, on June 30, 2019 alleges a violation of the Rehabilitation Act, 29 U..C. §791 and 794 and Title VII.  19-11420, R. Doc. 1. In this complaint Moore sued Postmaster General Megan J Brennan.  *Id*.  Moore alleges that she received a right to sue letter on May 29, 2019.  Moore alleges that while she had pending EEO complaints that Pressley did not engage in actionable conduct from April 6, 2018 to December 10, 2018, her return to work date.  *Id*. at p. 2.  Upon her return on December 10, 2018, Moore alleges that she was "only given one-two hours of work".  *Id*.

She alleges that upon returning to work she had new work restrictions which were different than the one she had while working under Richardson in 2017.  Her restriction was that she could walk for one hour continuously and three hours intermittent walking but no driving.  *Id*.  As she was before, Moore's work restriction allowed her to work for a maximum of four (4) hours.  *Id*.

According to Moore she described her duties to her physician, and he determined that she could do one hour of casing, two hours of dismount, and one hour of walking.  *Id*. However, when she returned to work, during the first four days of work Pressley gave her only one-two hours of work.  *Id*.  Pressley tendered an Offer of Modified Assignment for two hours of work which Moore accepted "under protest and duress." *Id.* at p. 3. According to Moore, after Pressley received questions from an investigator, he increased her work hours to four (4) hours.  *Id*.  She alleges that as a result of Pressley's actions, she lost 2 hours of work from December 10, 2019 to March 8, 2019 and this failure to allow her to work four (4) hours constitutes a failure to accommodate and retaliation.  *Id.*

**D.  Fourth Complaint**

Moore's Fourth EEO charge was filed on December 22, 2019. 20-02819, R. Doc. 1.  Moore contends that on November 27, 2019, Gretna Postmaster Priscilla Penton ("Penton") refused to

grant Moore sick or annual leave for her ADA related medical purposes. *Id*. at p. 4. Moore further alleged that on December 3, 2019, she arrived at work at 8 a.m. and was informed by her supervisor that her shift start time was changed to 11 a.m. and that she should come back then. *Id*. at p. 2. Moore alleges that she did not return at 11 a.m. because she had a physical therapy appointment and that Penton marked Moore AWOL.

Additionally, Moore alleges that this delay in start time meant that she could not take her prescribed pain and mental health medication because the medication made her drowsy and warned against operating heavy machinery. *Id*. at p. 3. Moore alleges that she could not take her medication after her shift because she is a single mother and primary caregiver to her daughter who suffers from asthma. *Id*.

Moore also alleges that her work duties were changed from casing her route and delivering mail to sitting continuously for four hours answering customer complaints. *Id*. Moore also alleges that she was not allowed to take medically prescribed 10-minute breaks and was confined to her desk. *Id*. On December 6, 2019, Moore alleges that Penton changed her duties to sitting and standing intermittently. *Id*. Moore assigns fault to for both her on duty and off-duty inability to take her medications. *Id*.

Moore further alleges that on December 16, 2019, Dr. Neil Duplantier, her orthopedic doctor requested that she return to the 7:45-11:45 a.m. schedule. *Id.* at p.4. She claims that he reduced her sitting time to two hours intermittently with no prolonged sitting. *Id.* According to Moore when she returned to work on December 20, 2019, she gave her supervisors Dr. Duplantier's revised restrictions regarding her proposed schedule change. Moore contends that Penton denied her request and put her out of the office. *Id*.

On December 21, 2019, Moore contends she returned to work and her start time remained 11 a.m. which she contends prevented her from taking medication for her back pain and mental health medication. *Id*. Moore contends that Penton continuously ignored her requests for a schedule change to the early morning hours which prevented her from safely taking her medication. *Id*. Moore alleges that the instances which she set forth state a claim for severe and pervasive harassment by Penton because of her disability, race, and gender. *Id*. She alleges that her fourth complaint covers November 14, 2019 to December 20, 2019. *Id*. Moore received her right to sue letter regarding this fourth charge of August 19, 2020. *Id*.

Moore concedes that the scope this complaint exceeds the scope of the claims accepted for investigation. *Id*. at p. 8. The final agency decision regarding the charges accepted for investigation occurred on August 18, 2020. *Id*. at p. 1. While the Fourth EEO charge was pending she alleges that she filed a fifth charge on February 11, 2020. *Id*. at p. 8.

### a. Fifth EEO Charge

The first count related to Moore's fifth EEO charge alleges that on December 28, 2019 she called to advise her supervisor that she would be late due to pain from her disability and was told "she was ok" but then later marked her AWOL. *Id*. at p. 5. She also alleges that she continued to be harassed by her supervisors who, despite three doctors' requests, refused to return her schedule to an 8 a.m. start time and refused to return her to her former work duties which prevented her from safely taking her medication. *Id*. She further alleges that due to high blood pressure she had lost reflexes and suffered mini strokes in January. *Id*. Moore further contends that on January 8, 2020, her primary care physician took her off of work completely. *Id*. On January 28, 2020 Moore contends she suffered a mini-stroke. *Id*. Moore also seeks to assert a loss of consortium

claim due to the loss of time available for her to spend with parent-child activities, loss of quality of parent-child activities, and her loss of patience. *Id*. at p. 6.

Also submitted with her fourth complaint is a document titled "Attachment Re Administrative Irregularities and Scope of Federal Complaint." *Id*. at p. 8. This is not a document submitted by the EEO but an attempt by plaintiff to explain why the allegations in the fifth complaint were not investigated. In the supplemental document, Moore contends that her fourth and fifth EEO charges were improperly combined by the EEO Mediator/Investigator and the EEO Services Analyst. *Id*.

According to Moore, on February 25, 2022 an Acceptance of Investigation was sent to Moore and seemingly contained only the allegations contained in her fourth EEO charge. *Id*. Moore contends that she never received an Acceptance of Investigation for her fifth EEO charge, and on April 1, 2020 she reached out to her EEO mediator to inquire about the charge. *Id*. The EEO mediator/investigator responded via email (which is not attached) on April 7, 2020. *Id*. Moore contends that she was then informed that the fifth charge was folded into the current investigation and no Acceptance for Investigation related to the charge was received for plaintiff. Notably plaintiff did not provide proof that the fifth charge was folded into the investigation of the fourth Charge.

Given these facts, Moore and her counsel, assumed the investigation into the fourth charge would include the allegations contained in the fifth. Consequently, Moore contends her fourth complaint should include the events of the fifth charge.

E. **The Subject Motion**

This motion arises out of the allegations contained in the Moore's fourth complaint. Defendant filed the subject motion seeking dismissal of plaintiff's claims of mini stroke and reduced reflexes which she contends was a result of the schedule she worked. According to the defendants, these claims fail because of the lack of medical causation evidence. R. Doc. 54. Defendant asserts that plaintiff did not submit expert disclosures by the deadline imposed by this Court. *Id*. The defendant further moves this Court to dismiss all of plaintiff's claims arising from her fifth EEO charge because the allegations were not accepted or investigated at the agency level and as such should not be before the Court because they are exhausted.

Plaintiff opposes this motion. Plaintiff contends that her experts are all non-retained, treating physicians, therefore expert disclosures were not required. Additionally, Moore asserts that the claims in her fifth EEO charge were incorporated into her fourth EEO charge per her communications with the agency. Plaintiff therefore requests that the Court deny this motion.

**II.**   **Standard of Review**

Federal Rule of Civil Procedure ("Rule") 56(a) provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986). In such a case, the moving party must "establish beyond peradventure *all*

of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.,* 662 F.3d 376, 378 (5th Cir. 2011). Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson,* 477 U.S. at 252.

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex,* 477 U.S. at 322–24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson,* 477 U.S. at 255. However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment." *Brown v. City of Houston, Tex.,* 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment). Although the Court may not evaluate evidence on a motion for summary judgment, the Court may decide as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists for the fact-finder to find for the non-moving party. *Anderson,* 477 U.S. at 254.

**III.** <u>**Analysis**</u>

## A. Fifth EEO Administrative Charge

The defendant contends that plaintiff's claims arising from her fifth EEO Administrative Charge should be dismissed because the claims were not presented to the EEO for consideration. Instead, Moore wrongfully assumed that her allegations of loss of reflexes and a mini stroke as a result of harassment for failing to restore her morning work hours were included in her fourth charge.

In opposition, plaintiff concedes that the fourth complaint does not include her loss of reflexes and mini stroke claims but suggests that the EEO investigator improperly folded these claims into her previously filed fourth charge. Moore suggests therefore that the claims were presented to the EEO for investigation. Alternatively, Moore contends even if the charges were not combined, the loss of reflexes and mini stroke claims could be said to grow out of the scheduling allegations in the fourth complaint.

Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir.2008) (citing *Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir.2006)). Filing an administrative charge with the EEOC satisfies this requirement. *Id.* The claims that an employee raises in her EEO charge constrain the scope of her district court suit. "[A] rule of reason ... permits the scope of a Title VII suit to extend as far as, but no further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAF Chemical Corp.*, 995 F.2d 576, 578 (5th Cir.1993).

Further, there must be some factual relationship between the act and the acts described in the charge, beyond the fact that both involve the same employer and the same general type of discrimination." *Turner v. Novartis Pharms.,* No. CIV.A. 10-0175, 2011 WL 901022, at *4 (E.D. La. Mar. 11, 2011), *aff'd sub nom. Turner v. Novartis Pharms. Corp*., 442 F. App'x 139 (5th Cir.

2011). The Fifth Circuit has instructed courts to "engage in fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and look slightly beyond its four corners, to its substance rather than to its label." *Pacheco*, 448 F.3d at 789.

The parties agree that the scope of the fourth complaint did not include the loss of reflexes or mini stroke contentions. Moore however places blame on the EEO investigator who purportedly sent her an email communicating that the allegations in the Fifth Charge would be "folded in" the Fourth Charge. R. Doc. 1, p. 8-9, 2002819. Moore, however, has failed to present proof that the email communication occurred. Further Moore admits that she "assumed that the Fifth Charge would be folded into the Fourth Charge.[3] R. Doc. 62, p. 2; R. Doc. 54-1, p. 5; 20-02819, R. Doc. 1, p. 8.

The parties further agree that the Fourth Charge's Acceptance for Investigation regarding the fourth complaint covered Moore's Race (Black), Sex (Female) and Physical Disability (Back) claims. Further the Acceptance specified that the disputed schedule change that occurred on or about November 30, 2019, and December 3, 2019. Also included in the Acceptance was Moore's claim that she was "sent off the clock on December 3, 4, 28 and 31, 2019. R. Doc. 54-1, p 4. Moore failed to respond to the Acceptance of Investigation within seven days challenging its completeness which would have allowed her the opportunity to expand the scope of the investigation to include her loss of reflexes and her two mini strokes. *Id*.

In support of her position that her claims in the Fifth Charge were presented to the EEO for investigation, Moore points to a document entitled "Existing Complaint Status". R. Doc. 62-1. This document is an electronically generated document that is accessed on the USPS EEO

---

[3] Moore's opposition acknowledgment: "On this basis plaintiff assumed that the scope of the investigation of the Fourth would include the Fifth and because of the Status report above, that assumption does not seem misplaced." R. Doc. 62, p. 2.

13

online e-file portal, the mechanism by which a claim can be made. *Id*. The Existing Complaint Status Form indicates that the claim was presented February 11, 2020 and refers to complaint PRE-012969-2020. Moore used the document to submit the following information to the EEO:

> "………From December 4 to January 8, 2020, I was working 11am to 3pm despite my giving Priscilla Penton, the then postmaster of the Gretna station, notes from three different doctors, including my PCP, advising her to restore my usual morning hours (7:45-11:45). The late start meant that I could not take my **back pain and anti-psychotic medications** until later in the evening, if at all. Consequently, I endure pain for more hours than necessary, and the added pain makes my blood pressure spike.
>
> As of January 8, the neurologist confirmed **I do not have reflexes** because of the high blood pressure. On January 9, 2020, my PCP, Dr Joseph Sejud, took me off work completely because Ms Penton would not assign me my usual part time hours of @ 7:45a to 11:45a. I have been off work since January 9. I was hospitalized January 28, 2020 and diagnosed with a **mini stroke** related to high blood pressure and high cholesterol. There was also a change in work duties from casing for 1 1-2 hours and carrying mail for the balance of my shift to sitting continuously for four hours (then sitting for two, standing for two). Sitting continuously violated my work restrictions. The consequences of not being able to take my medications and sitting for four hours were the m back would stiffen, I would often be nauseous at work and was limping by the time I got off work." R. Doc. 62-1.

Here, the additional acts alleged by Moore have a factual relationship beyond just involving the same individuals and same general type of discrimination. This Existing Complaint Status document clearly identifies the alleged loss of reflexes and the occurrence of at least one mini stroke in addition to the disputed schedule change and its impact on Moore's health. Notably the defendants do not provide any response to the Existing Complaint Status electronic form.

The Court therefore finds that based upon the evidence, Moore has clearly presented the claim to the EEO by this status document. The Court finds that while there is no evidence that the medical claims were investigated, the scope of her claim extends and includes the loss of reflexes and mini stroke allegations. Therefore, the defendants Motion for Summary Judgment seeking a dismissal of Moore's claims regarding the loss of reflexes and the mini strokes is **DENIED**.

B. **Lack of Expert Causation Evidence**

Defendant contends that Moore's mini stroke and reflex claims should be dismiss because these claims require expert testimony to establish medical causation. The defendant further contends that Moore failed to comply with the Court's expert deadline, disclosure and report submission. R. Doc. 54-1, p. 5. The defendant contends that rather than adhere to the deadline, Moore submitted a list of doctors she intends to call and indicated that she will seek causation testimony. *Id.* at p. 3. The defendant contends that while Moore may have disclosed or identified the experts, she failed to provide expert disclosures. *Id.* Consequently, the defendant contends that Moore's loss of reflexes and mini stroke claims should be dismissed for the lack of medical causation evidence.

Moore contends that on the one hand she does not plan to elicit expert testimony from the treating physicians. R. Doc. 62. On the other hand, she contends that all the doctors whose testimony will be elicited are treating doctors who are not required to produce expert reports per Rule 26. *Id.* Moore further contends that she informed defendant of her intention her treating physicians as witnesses on January 11, 2022. *Id.*

The Fifth Circuit has held that a plaintiff must submit expert testimony to prove causation when the issue of medical causation is complex and not within the knowledge of an ordinary lay person. *Vicknair v. Pfizer, Inc.*, No. CV 20-2705, 2021 WL 2554935, at *2 (E.D. La. June 22, 2021); *see Lagssiegne v. Taco Bell Corp.,* 202 F. Supp. 2d 512, 523-34 (E.D. La. 2002). Regarding Moore's personal injury claims, the question is whether her working conditions caused her loss of reflexes and mini strokes. The Court notes that to give an opinion on this issue would require scientific, technical, and specialized knowledge beyond the knowledge of lay persons. Therefore, while a treating physician may provide causation testimony, it is an expert opinion

subject to Federal Rule of Civil Procedure 26 ("Rule 26") disclosure requirements. *See Warren v. Mallory,* No. 18-11613, 2020 WL 4260448, at *3 (E.D. La. 2020).

Rule 26(a)(2)(C) requires the party submitting a non-retained expert's testimony to provide a summary disclosure that states: "(i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705 and (ii) a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C). The Fifth Court has not explicitly addressed the requirements of non-retained expert disclosures under Rule 26(a)(2)(C).

However, the Eastern District of Louisiana, has held that a party's Rule 26(a)(2)(C) disclosures were inadequate when the disclosure stated that the doctor would, "testify as to all aspects of the medical evaluation and treatment of [the plaintiff], as well as any future treatment." *Rodgers v. Hopkins Enterprises of Ms., LLC,* 2018 WL 3104288, at *2 (E.D. La. 2018); *see also Hooks v. Nationwide Hous. Sys., LLC,* No. 15-729, 2016 WL 3667134, at *4 (E.D. La. 2016). According to the Court, this was not sufficient to constitute a summary of the facts and opinions to which the witness is expected to testify as required by the rule. *Id.* The Court additionally held that disclosure through medical records was also insufficient to satisfy the requirements of the rule. *Warren*, 2020 WL 4260448, at *4 (E.D. La. 2020).

In this matter, the plaintiff did not provide a summary of facts and opinions to which the experts are expected to testify. Plaintiff only disclosed the name of the treating physicians and her intention to call them to offer testimony regarding medical causation. In support of their contention that disclosures were not required by treating physicians, Moore relies on *Stann v. Wilson Marine Transporters, Inc.* No. Civ. A. 00-1847, 2002 WL 34369201, at *1 (E.D. La. 2002) for the proposition that no further notice or explanation was required because the physicians are her

16

treating physicians. In *Stann* the Court held that under Rule 26(a)(2)(B)[4] reports are not required as a prerequisite to a treating physician's testimony. However, *Stann* was decided on the basis of Rule 26(a)(2)(B), whereas the question before the Court now is whether the plaintiff complied with the disclosures requirements of Rule 26(a)(2)(C).

At the time of the decision in *Stann*, Rule 26(a)(2)(C) did not exist and treating physicians were not required to make disclosures. However, in 2010, Rule 26 was amended and subdivision (a)(2)(C) was added to require summary disclosures of expert witness not required to submit reports under Rule 26(a)(2)(B). Consequently, treating physicians are not required to provide a report but they are required to submit disclosures in accordance with the scheduling order issued by the Court.

Having determined that disclosure was required but not provided, "'the party is not allowed to use that information ... to supply evidence on a motion ... or at a trial, unless the failure was substantially justified or is harmless.' " *In re Complaint of C.F. Bean L.L.C.*, 841 F.3d 365, 372 (5th Cir. 2016) (quoting Fed. R. Civ. P. 37(c)(1)).

In determining whether the failure to disclose was substantially justified, Courts evaluate four factors to assess the nature of the omission in deciding whether to strike the testimony: (1) the explanation for the failure to identify the witness; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice. *Betzel v. State Farm Lloyds*, 480 F.3d 704, 707 (5th Cir. 2007).

First, plaintiff offered no reason as to why disclosures were not produced except that she believed they were not necessary because the doctors were treating physicians. Plaintiff also made

---

[4] Rule 26(a)(2)(B) provides: *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.

this disclosure on January 11, 2022 after the November 19, 2021 deadline issued by the Court. In *Betzel* the Court acknowledged that it takes seriously the lack of explanation for adequately identifying expert witnesses within the designated timetable. *Id.*

Next, the Court looks at the importance of the testimony. Here the testimony relates to medical causation and the plaintiff must present admissible expert testimony regarding causation to meet her burden. Since the testimony is necessary to establish one of Moore's claims, the importance of the testimony high, but that does not require the Court to allow the testimony. *See Geiserman v. MacDonald*, 893 F.2d 787, 791–93 (5th Cir. 1990)(when expert was not disclosed by deadline, the high level of importance of the testimony was more reason for it to properly introduced); *Barrett v. Atlantic Richfield Co.*, 95 F. 3d 375, 381 (5th Cir. 1996)(the importance of the expert testimony underscored the importance of the plaintiff complying with the court's deadlines). The Fifth Circuit has acknowledged that even where the testimony is of high importance that this fact cannot singularly override the enforcement of local rules and the scheduling order. *Betzel*, 480 F.3d 708.

Next, the Court evaluates the potential prejudice that would occur if the testimony were allowed. Here, in addition to not providing the required disclosure, plaintiff also did not identify these physicians as experts until 53 days after the November 19, 2021 deadline in the scheduling order. R. Doc. 33. While the defendant does not explicitly acknowledge how they would be prejudiced, the failure of timely disclose has prevented the defendant from having the opportunity to depose the experts and request an independent medical exam to rebut the experts. *Id.*

Finally, the Court considers the possibility of a continuance to cure the prejudice. While the Court finds a continuance as a preferred method of addressing prejudice in some instances, a continuance is not a consideration in this case. *Id.* This claim has been pending since 2018 which

is more than enough time for the plaintiff to designate her medical witnesses and comply with the disclosure requirements.  Moore has filed no less than four separate complaints which have been consolidated for resolution, the parties have already been granted several continuances, and were told that no further requests for continuance would be considered R. Doc. 42.

The Court finds therefore, that the *Betzel* factors weigh in favor of excluding the medical expert testimony. Without the expert testimony, Moore's injury claims fail as a matter of law. The Court therefore finds that the motion for summary judgment seeking the dismissal of Moore's claims related to her loss of reflexes and mini strokes is **GRANTED**.

### IV.     Conclusion

Accordingly, **IT IS ORDERED** that the Defendant's **Motion for Partial Summary Judgment is (R. Doc. 54)** is **GRANTED in part and DENIED in part.**

**IT IS FURTHER ORDERED** that the Defendants motion for summary judgment on all claims associated with Plaintiff's fifth EEO charge is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants motion for summary judgment on plaintiff's claims in her fifth EEO charge related to her loss of reflexes and mini strokes is **GRANTED.**

New Orleans, Louisiana, this 13th day of February 2022.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**