UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**TAMARA D. MOORE**                                    **CIVIL ACTION**

**VERSUS**                                            **NO:    18-12270 c/w
                                                      19-2281, 19-11420, and
                                                      20-2819**

**LOUIS DEJOY, POSTMASTER**                           **SECTION: "KWR"**
**GENERAL, UNITED STATES**
**POSTAL SERVICE**

## ORDER

Before the Court is a **Defendant's Motion for Summary Judgment (Rec. Doc. 55)** filed

by the Defendant, Louis DeJoy, Postmaster General of the United States Postal Service ("USPS"),

seeking a dismissal of Plaintiff Tamara D. Moore's claims in four consolidated lawsuits with

prejudice.  Plaintiff, Tamara D. Moore ("Moore"), opposes the motion.  (Rec. Doc. 61, 69).   The

Postmaster filed a Reply to Moore's opposition.  (Rec. Doc. 82).  Moore filed a sur-reply (Rec.

Doc. 88) and defendant opposed to the motion for leave to file the sur- reply (R. Doc. 84).

## I.    Factual Summary

Tamara Danielle Moore originally filed her complaint *pro se* alleging violations of the

American With Disability Act Discrimination as a result of a work-related injury sustained while

employed by the USPS at the Gretna, Louisiana Post Office.  Rec. Doc. 1., Civ. Act. 18-12270.

According to Moore, a city carrier[1] with 14 years of service at the Gretna Post Office, she was

---

[1] The duties of a city carrier include  delivers and collects mail on foot or by vehicle under varying road and weather conditions in a prescribed area; maintains professional and effective public relations with customers and others, requiring a general familiarity with postal laws, regulations, products, and procedures commonly used, and with the geography of the area.  May be required to carry mail weight up to 35 pounds in shoulder satchels or other equipment and to load or unload container of mail weighting up to 70 pounds. Rec. Doc. 55-2.

injured on the job in 2014 while delivering mail. Moore injury occurred when a dog came running behind her causing her to turn around and place her mail bag in front to protect herself. While doing this, a second dog came running and encircled her.  Rec. Doc. 1-3.   In trying to flee from the dogs, she fell backwards and suffered debilitating injuries consisting of thoracic and lumbar fractures/spinal stenosis/ degenerative disc disease and four herniated discs.  Rec. Doc. 1.

### A.    First Complaint Events

Moore was originally released to full duty work on August 4, 2014 where she was offered a modified work schedule of 7 a.m. to 11 a.m.  Rec. Doc.  1, Exhibit 3.  Moore worked limited duty which consisted of casing her assigned route, Route 5633.  *Id*.  She also cased various vacant routes, pulled down vacant routes, and split routes into separate parts to be delivered by multiple carries.  *Id*.  She also cased mail in the box section and sorted return to sender mail for three years. *Id*.

She alleges in her pre-suit report that in May 2017, the former Officer in Charge, Juana Richardson ("Richardson") gave her a revised Offer of Modified Assignment in an effort to help her rehabilitate, that changed her schedule to 10:00 a.m. to 2:00 p.m.  Moore did not like the schedule change and claims that it caused her to work in pain.  She complains that the schedule change was contrary to her treating physicians' opinion regarding the appropriate schedule and she also complained that Richardson had no medical training or background to make this decision.

On May 26, 2017, Moore appealed Richardson's decision to Joseph Porche ("Porche"), the former Manager of Post Office Operations.  Rec. Doc. 1-2.  Moore considered the schedule change as not being a reasonable accommodation. Further she argues that there was no showing that keeping her at the original schedule would pose an undue hardship on her employer.  *Id*.  Moore

further alleged that the Post Office violated the JCAM contract, a contract between the Postal Service and the National Letter Carriers Association, because they are contractually obligated to allow her to begin work at the start of her shift.  Richardson, according to Moore, refused to restore her original work schedule. It was furthered noted that Moore did not submit her medication to Richardson for her to determine whether she had to take it at a specific time.  *Id.* at p. 4.  In lieu of submitting her medication information, Moore submitted three (3) doctors' notes which indicated that she needed to be restored to her original work hours because the new schedule affected the timing of her medication.

Moore also alleges that she was never told that she could contest a revised Offer of Modified Assignment but was told by Richardson that refusing to sign the offer was the equivalent of forfeiting the offer.  Moore thereafter relented and accepted the job offer albeit under duress. *Id*. at p. 5.

Moore specifically alleged that from May 1, 2017 to June 6, 2017 she was forced to work in a constant state of physical and mental angst due to the unwarranted, unlawful, and non-contractual change to her schedule. Moore alleges that three years after her initial injury she experienced a recurrence on June 6, 2017 and that she was medically excused from duty on June 7, 2017.  *Id.* at p. 4.  Moore was issued a right to sue letter on August 31, 2018. R. Doc. 1-2, p. 35. Moore alleges that she is seeking $204, 910.94 for compensatory damages in addition to lost wages.

On May 26, 2017, Moore wrote to Porche imploring him to intervene, which she claims he did not.  *Id*. at p. 5.  Moore contends that Richardson must have known about the OWCP FECA process but failed to advise her because of bias and prejudice.  *Id*.  Moore claims that the refusal

to restore her previous schedule constitutes disability discrimination because Richardson had the ability to restore her work schedule at any time but refused to do so. *Id*. Moore claims that only her and another disabled employee had their schedule changed, where non-disabled employees never experienced a changed in work schedule. *Id*. at p. 6.

According to Moore, Richardson, in an affidavit, conceded awareness of Moore's disability but noted the schedule change was due to operational needs. Moore points out that Richardson indicated that Moore could not lift heavy packages and requested assistance from coworkers to lift heavy flat buckets of mail on her lap board. *Id*.

Moore contends the change in schedule did not eliminate the need for her to request assistance. *Id*. Additionally, Moore stated that Richardson acknowledged that there was no change to the schedule of full-time workers because they could perform their job without assistance. *Id*.

Moore's grievance was resolved by settlement when Richardson agreed that she would wait to see if Moore could case her own assignment due to her new restrictions when she returned to work. *Id*. at p. 7. Moore complains that rather than restore her original work schedule, Richardson decided to pay overtime to other works to perform Moore's work. *Id*. at p. 8.

As a result of the aforedescribed events, Moore alleged that she seeks to recover $204,910.94[2] for compensatory and punitive damages, loss wages because her work hours were never restored even though she was "medically released" to active duty. She further alleged that her Postmaster, Dwayne Pressley ("Pressley") harassed her due to her disability because she was

_____

[2] Moore seeks $200,000 in compensatory and punitive damages. She also seeks $4,910.94 which consists of 42.50 hours of administrative pay totaling $1,210.40; 16 hours of missed pay from OWCP a total of $45.68; 4 hours of Annual leave for a total $113.92 and 73.29 hours of out-of-schedule pay for a total of $3,130.94.

forced to work in violation of federal labor laws.  She alleges that the Gretna Postal station has a discriminatory culture which affected her health when she was forced to labor in pain, extreme stress, high anxiety, depression, hair loss, sleep deprivation, compulsive overeating resulting in the elevation of her blood pressure and borderline diabetes causing an enlarged heart.

**B.    Second Complaint Events**

According to the exhibit documents attached to the second complaint, Moore was released to full duty without restrictions, on January 4, 2018. However, during the investigatory interview with Pressley, she complained that the physician who released her to full duty was not her regular attending physician of record.  R. Doc. 1-3, p. 12, Civ. Act. 19-02281.  According to Moore, she received notice that the consulting physician released her without restriction to return to work.  *Id.* at p. 37.  Moore filed a grievance letter where she indicated that she visited the physician to recieve a shot for pain. He then released Moore to full duty without restriction contrary to her doctor's reports, MRI, her present physical condition, and without conducting an examination.  *Id*.

Moore attached as an exhibit to the complaint, a Work Capacity Evaluation for Musculoskeletal Conditions which she requested from the U.S. Department of Labor dated January 10, 2018.  *Id*. at p.1.  The January 10, 2018 work capacity evaluation indicated that Moore could possibly do sedentary work but also found that she could not perform any activity such as sitting, walking, standing reaching, reaching above shoulder, twisting, bending operating a motor vehicle either to or from work.  *Id.*

Moore indicates that on January 9, 2018, she telephoned the Enterprise Resource Management System (eRMS) to request 160 hours of Office of Worker's Compensation, the

Louisiana Workers Office ("OWCP-LWOP") in lieu of her IOD.  *Id*.  In response to being released to full duty, Moore sought a medical note from her attending doctor who, on Wednesday, January 10, 2018, concluded that she was not released to full duty without restrictions.

According to Pressley, despite having been released to full duty, Moore did not report to work from January 18, 2018 thru January 31, 2018, which prompted an investigation by Pressley. During the investigation, Moore was presented a series of questions. During the interview, Moore refused to acknowledge that she understood that by failing to call into the eRMS system her absence is considered AWOL and that disciplinary action, up to removal from the Postal Service, could be taken against her.  *Id*. at p. 13.  She did not recall receiving documentation from HR about the Postal Service's policies regarding unscheduled leave or AWOL and that she needed to provide documentation after being out for more than three days.  *Id*.  She also declined to acknowledge that being AWOL was a serious charge.

At this time Moore acknowledged that she did not have an approved FMLA case on file but that she received and EAP in 2016.  *Id*.  She further acknowledge that she has been to EAP several times but indicated that she was not aware that she could get an extension of her original FMLA because her requests for extension were denied since she did not have enough work hours per HR in Greensboro, N.C.  *Id*.

Pressley questioned Moore about whether she called the OWCP-LWOP, or the IOD for the unscheduled leave for the period she had been out of work.  Rather than answer, she responded that she did not know how to answer the question.  *Id*.

At the conclusion of the investigation, Pressley communicated his expectations to Moore as follows: (1) Moore was to turn all medical documentation into injury compensation; (2) call into

the eRMS systems to request any unscheduled leave; and (3) get a CA-17 form from the office to be filled out by Postal Management when she has to go to the doctor for her to turn back into injury compensation to update her file.  *Id*. at p. 15.

On January 18, 2018, Moore received a letter from Pressley indicating she would be relinquishing her bid assignment because she failed to turn in medical documents indicating that she would be able to fulfill the requirements of her bid assignment within the next 6 months.  *Id*. The letter contained the policy for limited duty letter carriers' ability to bid for a job while on light or limited duty.  *Id*.

On January 19, 2018 Pressley requested supporting documentation, which Moore represented she had in her possession for the dates she did not report to work. Pressley also gave Moore the opportunity to turn in the signed Request for or Notification of Absence- PS Form 3791 ("PS 3971")  which she represented were signed by Richardson & Shirley Clarke ("Clarke") for the dates she did not work.  *Id*. at p. 17.  Pressley gave her until January 25, 2018 to provide the documentation and reminded her that the failure to provide the documentation of all of the absences will render her absent without leave ("AWOL").  *Id*.

On January 20, 2018, Moore responded to Pressley's letter of January 18, 2018 and advised him that because she was awarded her bid assignment on or before May 2013 and did not sustain her injuries while on duty until May 2014 (reoccurring in June 2017), that according to the Joint Contract Administration Manual (JCAM) she was entitled to retain her position if the disability was temporary.  *Id*. at p. 25.  She thereafter referenced her January 10, 2018 Work Capacity Evaluation of Musculoskeletal Conditions, which was hand delivered to Pressley on January 11, 2018, that noted that Moore had not reached maximum medical improvement (MMI).

Moore further advised Pressley that his removal of the bid assignment would violate the JCAM. *Id.* She thereafter detailed several instances in which Pressley, despite receiving her doctor's Work Capacity Evaluation, proceeded to enter Moore in the system as AWOL beginning January 12, 2018. *Id.* at p. 26. She complained that Pressley entered her appearance at the investigatory interview as hours worked, even though Moore said they were not hours worked, and that Pressley's action would result in her being removed from OWCP's automatic periodic roll and affect her pay. She also complained that on January 18, 2018 he sent a letter to her home dated January 18, 2018 advising her that he would relinquish her assignment, which she viewed as acts of harassment. *Id.* at p. 26. She concluded her letter by demanding that Pressley cease and desist.

On January 20, 2018, Moore filed a grievance against Pressley regarding the letter advising her that he would relinquish her bid-for duty assignment. *Id.* at p. 29. Moore asserted that the clause she relied upon, which Pressley did not apply to her bid-for route 5633. *Id.* On the same day, Moore filed a separate grievance regarding the AWOL charges for January 12, 2018, January 13, 2018, January 16, 2018, and January 17, 2018 due to the January 10, 2018 Work Capacity Evaluation and MMI determination. Moore therefore argued that there was no rationale or legitimacy to the entry of the AWOL finding. She also contended that she was not entered as AWOL until January 12, 2018, four (4) days after her initial call-in and the day after Pressley received medical notice of her inability to return to work. According to Moore, the AWOL entry was biased, and an illegitimate act performed by management in retaliation for her inability to perform her duties. *Id.* She requested the immediate reversal of the AWOL entries and an end of the menacing behavior exhibited by management. She also sought to have management officials responsible for their wrongful attendance charge.

8

On January 22, 2018, Moore submitted another grievance regarding Pressley's request for 3971's signed by Richardson and Clarke. *Id*. at p. 33. She pointed out that she had a deadline of January 25, 2018 to get the documentation to Pressley otherwise administrative action would be taken against her up to her removal from the post office.  *Id*.  She asserted that the documentation supporting her time off was in her employee file otherwise she would not have been getting paid by the workers compensation office.  *Id*.  She reasserted claims that Pressley was aware of her physician's determination but ignored it.  *Id*.

She further noted that on January 18, 2018, during a telephone call Pressley inquired why she was not at work despite her having communicated that she was excused from duty by her doctor's documentation.  *Id*. at p. 34.  According to Moore, Pressley advised that Moore had a history of being AWOL, but Moore retorted that the only previous AWOL entry, entered by former Acting Postmaster Richardson, was false because she had in fact submitted a PS Form 3971 for May 31, 2017, June 1, 2017 and June 2, 2017.  *Id*.

 She reminded Pressley that she had filed and had an active EEO complaint and demanded a copy of all the PS Form 3971's since she worked for the Gretna station.  *Id*.  In her grievance Moore also requested the filing of a "Joint Statement on Violence and Behavior in the Workplace" Complaint which was authorized in places where there is unacceptable level of stress in the work place, violence, or threats of violence by anyone in the postal service. *Id*. at p. 36.

On January 31, 2018, Pressley wrote to Moore advising her that the National Association of Letter Carriers (NALC) President requested her presence at an investigation spearheaded by the NALC and he clarified that it was not at management's request.  *Id*. at. 18.  On March 17, 2018 Moore was provided with a Notice of Fourteen Day Suspension No Time Off which indicated that

after reviewing her attendance record from January 18, 2018 through January 31, 2018 that she did not work during that period which resulted in 96.0 hours of AWOL.  *Id*. at p. 20.

In the Notice of Suspension, it was noted that she failed to turn in PS Form 3971's signed by Supervisor Clarke and Richardson covering the entire period of her extended absence.  *Id*. at. 20-24.  It was further noted that while Moore informed management that she may possibly have a qualifying FMLA claim, she did not qualify to receive the protection due to the fact she only had 191 work hours but needed a total of 1250 hours to qualify for FMLA.  *Id*.

Pressley noted that she did not report to work, failed to get her absences approved, and that she ignored his attempts at communicating by mail which were returned as unclaimed.  *Id*. Pressley noted in the suspension notice that Moore did not have an active claim accepted by the OWCP office for being out of work, she had been taken of the Periodic Roles via Injury Compensation, and failed to call into the eRMS system requesting unscheduled leave. *Id.*  He noted that this suspension did not result in a loss of time or pay but still constituted time-off suspension.

On February 21, 2018, Moore secured an additional attending physician authorization for her continued absence from work relating to her recent Duty Status Report (CA-17) which was forward to Lori St. Charles in Injury Compensation.  *Id.* at p. 37.

After receiving the notice of suspension submitted by Pressley and approved by Clarke, Moore filed a grievance, dated March 19, 2018, regarding Pressley's contention that she had unsatisfactory attendance, was AWOL, and failed to follow instructions.  *Id.*  She disputed the contents of Pressley's letter regarding whether she provided documentation for her inability to report to work and perform the assigned duties.  *Id.* at p. 39.  She disputes his account that she ignored and returned unclaimed five (5) letters mailed from management to her.  Moore also stated

in her grievance that she responded to each letter by direct return reply via Certified letter and also submitted documented grievances in response to the letters.

Moore further stated that though it was Pressley's intent to have her forcibly removed from OWCP's periodic roll, she remained on the periodic roll and her OWCP claim remained active. *Id*.  She thereafter requested a withdrawal and removal of the suspension from her personnel record.

In the second complaint, Moore alleged that on August 31, 2018 she received a Notice of Right to Sue letter.  Further, on December 16, 2018, a final agency decision of the U.S. Postal Service was issued regarding Moore's complaint of discrimination regarding the events that occurred from January 12, 2018 through January 19, 2018 and the March 17, 2018 Suspension Notice.  *Id*. at p. 50.

In the second suit, Moore named Pressley as a defendant in addition to the Postmaster General.  Rec. Doc. 1, Civ. Act. 19-02281.  Moore, *pro se,* filed the second suit alleging a violation of the Americans with Disabilities Act, 42 U.S.C. §§12112 to 12117, which included the failure to accommodate her disability, retaliation, and violation of the contractual provision.  Moore alleges that as to this complaint she seeks $200,000 for compensatory damages because she claim that she has been continuously harassed by unidentified different management officials since she sustained her on the job injury on May 5, 2014.  *Id*.

Moore further alleged that the consistent harassment resulted in emotional torment, constant worry about the loss of her livelihood, hair loss and the elevation of her stress.  She also complains of experiencing anxiety, depression, sleep deprivation and compulsive overeating affecting her blood pressure and borderline diabetic state.  She complained that continuous set of

harassment based on her disability had an adverse effect on her health due to the elevation of her blood pressure resulting in an enlarged heart and greater risk for heart disease. Moore, however, has voluntarily abandoned the discrimination claim. It is unclear if Moore has abandoned the harassment, retaliation, or the alleged breach of contract claims. Rec Doc. 88, p. 1. Nevertheless, for an understanding of the sequence of events, the second suit events have been included herein.

### C.   Events leading to Third Complaint

Moore's third complaint Civ. Action 19-11420, filed by counsel, on June 30, 2019 alleges a violation of the Rehabilitation Act, 29 U.S.C. §791 and 794 and Title VII. 19-11420, R. Doc. 1. In this complaint Moore sued Postmaster General Megan J Brennan. *Id*. Moore alleges that she received a right to sue letter on May 29, 2019. Moore alleges that while she had pending EEO complaints, Pressley did not engage in actionable conduct from April 6, 2018 to December 10, 2018, her return to work date. *Id*. at p. 2. Upon her return on December 10, 2018, Moore alleges that she was "only given one-two hours of work". *Id*.

She alleges that upon returning to work she had new work restrictions which were different than the one she had while working under Richardson in 2017. Her restriction was that she could walk for one hour continuously and three hours intermittent walking but no driving. *Id*. As she was before, Moore's work restriction allowed her to work for a maximum of four (4) hours. *Id*.

According to Moore she described her duties to her physician, and he determined that she could do one hour of casing, two hours of dismount, and one hour of walking. *Id*. However, when she returned to work, during the first four days of work Pressley gave her only one-two hours of work. *Id*.

Pressley tendered an Offer of Modified Assignment for two hours of work which Moore accepted "under protest and duress." *Id.* at p. 3. According to Moore, after Pressley received questions from an investigator, he increased her work hours to four (4) hours. *Id.* She alleges that as a result of Pressley's actions, she lost 2 hours of work from December 10, 2018 to March 8, 2019 and this failure to allow her to work four (4) hours constitutes a failure to accommodate and retaliation. *Id.*

### D.      Events leading to Fourth Complaint

Moore's Fourth EEO charge was filed on December 22, 2019. 20-02819, R. Doc. 1. Moore contends that on November 27, 2019, Gretna Postmaster Priscilla Penton ("Penton") refused to grant Moore sick or annual leave for her ADA related medical purposes. *Id.* at p. 4. Moore further alleged that on December 3, 2019, she arrived at work at 8 a.m. and was informed by her supervisor that her shift start time was changed to 11 a.m. and that she should come back then. *Id.* at p. 2. Moore alleges that she did not return at 11 a.m. because she had a physical therapy appointment and that Penton marked Moore AWOL.

Additionally, Moore alleges that this delay in start time meant that she could not take her prescribed pain and mental health medication because the medication made her drowsy and warned against operating heavy machinery. *Id.* at p. 3. Moore alleges that she could not take her medication after her shift because she is a single mother and primary caregiver to her daughter who suffers from asthma. *Id.*

Moore also alleges that her work duties were changed from casing her route and delivering mail to sitting continuously for four (4) hours answering customer complaints. *Id.* Moore also alleges that she was not allowed to take medically prescribed 10-minute breaks and was confined

to her desk.  *Id*.  On December 6, 2019, Moore alleges that Penton changed her duties to sitting and standing intermittently.  *Id*.  Moore assigns fault to her employer for both her on duty and off-duty inability to take her medications.  *Id*.

Moore further alleges that on December 16, 2019, Dr. Neil Duplantier, her orthopedic doctor requested that she return to the 7:45-11:45 a.m. schedule.  *Id.* at p.4.  She claims that he reduced her sitting time to two hours intermittently with no prolonged sitting.  *Id.*  According to Moore when she returned to work on December 20, 2019, she gave her supervisors Dr. Duplantier's revised restrictions regarding her proposed schedule change. Moore contends that Penton denied her request and put her out of the office. *Id.*

On December 21, 2019, Moore contends she returned to work and her start time remained 11 a.m. which she contends prevented her from taking medication for her back pain and mental health.  *Id.*  Moore contends that Penton continuously ignored her requests for a schedule change to the early morning hours which prevented her from safely taking her medication.  *Id.*   Moore alleges that the instances which she set forth state a claim for severe and pervasive harassment by Penton because of her disability, race, and gender.  *Id*.  She alleges that her fourth complaint covers November 14, 2019 to December 20, 2019.  *Id*.  Moore received her right to sue letter regarding this fourth charge of August 19, 2020.  *Id*.

On October 14, 2020, Moore filed her fourth complaint. Rec. Doc. 1, Civ. Act. 20-2819. She alleges that her fourth complaint covers November 14, 2019 to December 20, 2019.  *Id*.  The final agency decision regarding the charges accepted for investigation occurred on August 18, 2020.  *Id*.

## II.    <u>Standard of Review</u>

Federal Rule of Civil Procedure ("Rule") 56(a) provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if resolving that fact in favor of one party could affect the outcome of the suit. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Poole v. City of Shreveport*, 691 F.3d 624, 626-27 (5th Cir. 2012).

Where the moving party bears the burden of proof at trial as the plaintiff, or as a defendant asserting an affirmative defense, that party must support its motion with "credible evidence . . . that would entitle it to directed verdict if not controverted at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 331 (1986). In such a case, the moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.,* 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original); *see also Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.,* 662 F.3d 376, 378 (5th Cir. 2011). Credible evidence may include depositions, documents, affidavits, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c). Moreover, in evaluating a motion for summary judgment by the party with the underlying burden of proof, the Court considers the substantive evidentiary burden of proof that would apply at the trial on the merits. *Anderson,* 477 U.S. at 252.

Once the moving party has made its showing, the burden shifts to the non-moving party to produce evidence that demonstrates the existence of a genuine issue of fact. *Engstrom v. First Nat. Bank of Eagle Lake,* 47 F.3d 1459, 1462 (5th Cir. 1995) (citing *Celotex,* 477 U.S. at 322–24). All justifiable inferences are to be drawn in the non-moving party's favor. *Anderson,* 477 U.S. at 255.

However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for Summary Judgment." *Brown v. City of Houston, Tex.,* 337 F.3d 539, 541 (5th Cir. 2003) (internal citations omitted); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996) (stating that "mere conclusory allegations" are insufficient to defeat a motion for summary judgment).  Although the Court may not evaluate evidence on a motion for summary judgment, the Court may decide as to the "caliber or quantity" of evidence as part of its determination of whether sufficient evidence exists for the fact-finder to find for the non-moving party. *Anderson,* 477 U.S. at 254.

## III.   <u>Analysis</u>

Defendant contends that Moore claims in the First and Third Complaints should be dismissed because: (1) she is not a qualified individual; (2) the accommodations requested were not reasonable and would impose hardship; and (3) there is no evidence of materially adverse hardship.  Rec. Doc. 55.  The defendant further alleges that Moore's race, sex, and harassment claims should be dismissed under Title VII.  *Id.*

Plaintiff contends that Moore's claims of a violation of the Rehabilitation Act are detailed in the First, Third and Fourth Complaints should be denied because she could perform the essential functions of the Limited Duty Job properly.  The plaintiff acknowledges that she abandons her second complaint of intentional disability discrimination and concedes that there was no adverse action.  Rec. Doc. 69, p. 2.

Further, Moore acknowledges that while the second complaint contains allegations of retaliation, the retaliation was not related either to ADA claim or based on an EEO charge, so these

16

claims were voluntarily abandoned by Moore.  Moore does not stake a position regarding her claims of race, sex, and harassment.

In her sur-reply, Moore also raises the issue of whether or not the change in her duties and schedule constituted a reassignment. Rec. Doc. 88, p. 2-5.  The Court does not reach that issue here. Nor does the Court touch the issue of whether the duties Moore was assigned to constitute a reasonable accommodation; those issues are reserved for the jury.  *Id.* at p. 5.  Additionally, the issues of whether USPS suffered undue hardship, which was not adequately briefed, is also an issue for the jury.

### A.   Qualified Individual

The Defendant contends that summary judgment is appropriate because Moore could not perform the job she was hired to do, letter carrier, and therefore she was not a qualified individual. Therefore, the defendant contends that Moore's first and third lawsuit should be dismissed.

Moore contends that her job was changed to a limited duty position because she was injured on the job.  As a result, she contends that she could perform the limited duty jobs and that her employer failed to accommodate her when they changed her work schedule and reduced her hours to two (2) hours despite the fact that she was authorized to work four (4) hours a day.

The Rehabilitation Act adopts the standards applied under Title I of the Americans with Disabilities Act of 1990 ("ADA") to determine whether there has been a violation of the Rehabilitation Act. 29 U.S.C. § 794(d). The ADA defines "disability" as, inter alia, "a physical or mental impairment that substantially limits one or more of [a person's] major life activities." 42 U.S.C. § 12102(1)(A). A person is substantially limited with respect to the activity of working when that person is significantly restricted in the ability to perform either a class of jobs or a broad

range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.

The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.  29 C.F.R. § 1630.2(j)(3)(i); *see also Sutton v. United Air Lines*, 527 U.S. 471, 491 (1999) (citing regulations and explaining that the phrase "substantially limits" means, "at a minimum, that [a person is] unable to work in a broad class of jobs").

The Rehabilitation Act prohibits discrimination against an otherwise <u>qualified individual</u> with a disability in programs that receive federal funding. 29 U.S.C. § 794(a); *Kapche v. City of San Antonio*, 176 F.3d 840, 844 n. 27 (5th Cir. 1999).  The Rehabilitation Act is the exclusive remedy for federal employees.  *Id.*  To establish a claim under the Rehabilitation Act, a plaintiff must show that she: (1) is an individual with a disability; (2) is otherwise qualified to perform the job; (3) was employed in a program or activity that receives federal funding; and (4) was discriminated against solely because of his disability. *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir.1997); *Chandler v. City of Dallas*, 2 F.3d 1385, 1390 (5th Cir.1993).

If this prima facie case is made, courts then apply the familiar *McDonnell Douglas* burden shifting analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, (1973). The burden then shifts to the defendant to produce evidence of a nondiscriminatory reason for the employment action.  *Id*.  If such evidence is proffered, the burden of production then shifts back to the plaintiff to show that the nondiscriminatory justification was mere pretext.  *Id*.

A qualified individual with a disability is defined as:

> An individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility

requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. §1231 (2)

It is undisputed that Moore performed as a letter carrier up to May 2014. Thereafter she was assigned a limited duty position upon her return to work in August 2014, after sustaining a work-related injury, a fact which is ignored by the defendant. Rec. Doc. 55-1. She worked in the limited duty position until May 2017 when the officer in charge, Richardson, changed her work schedule from 7:45 a.m.-11:00 a.m. to 10:00 a.m. to 2:00 p.m.

According to Moore, this schedule change remained in place from May 1, 2017 thru June 6, 2017 when she went out on disability again. Rec. Doc. 1-2. Moore complains that the defendant failed to show that the original schedule was changed due to hardship. *Id*. Moore claims she provided Richardson with three doctors notes which indicated that Moore needed to be restored to her original work hours. *Id*. These records are not a part of the record and nor does Richardson mention receiving medical records, nor does she deny having received them, in her declaration. Rec. Doc. 55-5.

The question before the Court is which job should the Court consider in determining whether Moore was a "qualified individual; the City Carrier job that she last worked in 2014 or the limited duty job she worked from 2014-2017.

The USPS provides limited duty assignments to employees who are injured while on duty. *See Jackson v. Brennan*, No. H-18-1281, 2019 WL 5694508, at *1 (S.D. Tex. November 13, 2019) Limited duty assignments "generally consist of tasks that are not being performed by another employee, but that, at the same time are within the injured employee's medical restrictions." *Id*. The USPS's duty to provide limited duty assignments arises from its Employee and Labor

Relations Manual. *Id*.  Limited duty refers to assignments given under the Labor Department regulations.  *See Ensley-Gaines v. Runyon,* 100 F.3d 1220, 1222 (6th Cir. 1996).

The issue of what position a plaintiff must be otherwise qualified to perform to entitle him to invoke the protection of the Rehabilitation Act, has been addressed by different courts but not the Fifth Circuit.  Some courts have found that once an employee has been offered and accepted light duty work the relevant inquiry for determining whether he is otherwise qualified is his ability to perform essential function of the light or limited duty work and not the position for which he was originally hired.  *Karnes v. Runyon,* 912 F. Supp. 280, 286 (S.D. Ohio 1995)(where plaintiff unable to perform her original work "keyer clerk" position, the Court found that her qualification should be measured against the "post-surgery" job she held at the time of the alleged discrimination.);  *see also Taylor v. Garrett*, 820 F. Supp. 933 (E.D. Pa. 1993)(the position plaintiff held at the time of the alleged discrimination is more appropriate for determination of whether she "can perform the essential functions of the job in question").

In *Garrett*, the court found that because the Navy had offered the plaintiff light duty work, which he had to accept to maintain workers' compensation eligibility-and the plaintiff thereafter challenged his separation from light duty work. The court noted that the relevant inquiry was his qualifications to perform the light duty work in which he was engaged when the alleged discrimination occurred.  *Garrett,* 820 F. Supp. at 938.

Also, in *Florence v. Runyon,* the court held that the employee was required to be 'otherwise qualified' for limited duty position, rather than letter carrier position. 990 F. Supp. 485 (S.D. Tx. 1997).  The court noted that while the defendant's position was that the plaintiff should be qualified for his official position of letter carrier, to hold such a position would allow the postal service to

operate outside the Rehabilitation Act simply due to the formal job title that the employer has chosen to confer on a handicapped employee. *Id.* The court also found that such a result contradicts common sense and also the basic promise set forth in the regulations that the 'the Federal Government shall become model employer of handicapped individuals.'" *Id.*

Given that at the time of the alleged discrimination, Moore was working in a limited or light duty position, it is that position which she should be otherwise qualified to perform. The defendant fails to address whether Moore was otherwise qualified to work in the limited duty position that she held in May 2017 thru June 2017 and December 2018 thru January 2020 which is a question of material fact. Therefore, the Motion for Summary Judgment seeking a dismissal of Moore's rehabilitation claims arising out of the change in schedule in May 2017 thru June 2017 and December 2019 is **DENIED**.

### a. <u>Reasonable Accommodation</u>

The defendant contends that Moore did not identify any reasonable accommodation that would have permitted her to perform her essential job functions of a City Letter Carrier. Rec. Doc. 55-1. The defendant further contends that it would be an unreasonable accommodation for the employer to have to exempt the employee from performance of an essential function of the job. *Id*. The defendant further contends that Moore's failure to accommodate claim fails because she contends that her employer should have given her a light duty assignment. *Id*.

Moore contends that she had worked a four (4) hour morning shift from December 2018 to November 2019 when Penton revoked her modified job assignment. Moore contends that she did not need a reasonable accommodation to perform her modified job assignment. Her new job assignment according to Moore violated her work restrictions because it required four hours of

continuous sitting.  *Id*.   Moore contends that the defendant continued to require her to work in this assignment in violation of her work restriction despite receiving written notice of her doctor's limitations.  *Id*. Moore also contends that her former duties of casing and delivering the back part of her route was now being handled by City Carrier Assistant Deanna Myles.  Rec. Doc. 69, p. 14.

Moore has the initial burden to show: (1) that she is disabled; (2) that she is otherwise qualified; (3) that her employer knew or should have known of his disability; (4) that she requested a reasonable accommodation; and (5) that her employer failed to provide an accommodation. *Burdett–Foster v. Blue Cross Blue Shield of Mich*., 574 Fed. Appx. 672, 680 (6th Cir.2014) (citing *DiCarlo v. Potte*r, 358 F.3d 408, 419 (6th Cir.2004)); *see also Sapp v. Donohoe,* 539 Fed. Appx. 590 (5th Cir. 2013) An individual is "qualified" if, "with or without reasonable accommodation, [he] can perform the essential functions of the employment position that [he] holds or desires." 42 U.S.C. § 12111(8).

The first, third, and forth elements are undisputed.  Rec. Doc. 55-1.  The defendants were aware of Moore's longstanding disability, she had requested accommodations through the submission of her doctor's restrictions repeatedly, and her supervisors, Penton, Pressley and Richardson, knew about her limitations but failed to adhere to them.  *Id*.

As detailed previously at the time of the alleged discrimination, Moore was working a limited modified duty job based upon the restrictions set by her doctor which Richardson, Pressley and Penton were aware of when changing her duties.  *Id*.  Moore contends that those changes were outside of her restrictions.  *Id*.

The evidence suggest that Richardson may have ignored the fact that Moore was working in a limited duty job at the time she changed her work schedule and that the her start time was also

a medically necessary component of her limited duty.  She like Penton, stated the reason for the schedule change as being for "staffing and operational needs" but provided no explanation of the needs that existed at the time the decision was made.  Noticeably absent from Richardson's declaration is that at the time she decided to change Moore's schedule she had been working that earlier shift for three years and there was no evidence that she had difficulty working that shift.

While Pressley states that he did not have work available for Moore within her restrictions, he also failed to present any evidence of the work that was available or that the available work did not include casing or other components of the limited duty job.  Further, the defendant's own submission notes that when Moore returned to work, she was limited to working four hours a day, and could not lift more than twenty pounds and yet he admittedly limited her to two hours of work. *See* Rec. Doc. 55-1, p. 15.  Because Pressley considered Moore's original job and not her limited duty job, he failed to consider the essential functions of the limited duty job that Moore could have performed so as to provide a reasonable accommodation.

As to Penton's decision to change Moore's schedule she generally says there was a need for Moore to begin at 11:00 a.m.  She however provided no evidence of the need that prompted the change.  Like Richardson and Pressley, Penton only considered the original City Carrier job duties and not Moore's limited job duties per their declarations.  There are material facts in dispute regarding whether Richardson, Pressley, and Penton could reasonably accommodate Moore's four-hour work restriction with alternating walking, standing, and sitting.  The Motion for Summary Judgment seeking a dismissal of her claim that the defendants failed to reasonably accommodate her medical restrictions which would have allowed her to work in limited duty job is **DENIED.**

Further the degree to which Moore asserted a harassment claim against Penton, the defendants failed to adequately brief it, therefore to the extent this motion seeks a dismissal of such claim, it is **DENIED**.

### b.   Race and Sex Discrimination under Title VII

The defendant contends that Moore's race and sex-based discrimination claims should fail. Defendant contends that Moore has not offered any evidence that adverse employment action alleged was made based on her race or sex. Further, the defendant contends that Moore has failed to show that a similarly situated individual not in her protected class was treated more favorable under the same or similar circumstance.

In opposition, Moore explicitly states that the race claim is maintained, but does not mention her sex claim. Given the ambiguity, the Court will address both the claims of race and sex discrimination alleged by Moore. Moore alleges that the race and sex discrimination in the fourth complaint is in connection with her supervisor Priscilla Penton, adjusting her work hours in contrary to the advice of her physicians. Additionally, Moore alleges that she has established a prima facie case of discrimination including alleging similarly situated employees, Juan Gabriel ("Gabriel") and Natalie Leres ("Leres"), who are not in her protected class, were treated more favorably. According to Moore, Gabriel and Leres, establish a prima facie case for gender discrimination.

Under the *McDonnell Douglas Corp. v. Green* burden-shifting analytical framework described above, plaintiff first must establish a prima facie case. 411 U.S. 792 (1973).  To establish a prima facie case based on alleged differential treatment on account of race or gender, a plaintiff must demonstrate that: (1) she belongs to a protected group; (2) she suffered an adverse

employment action; (3) she suffered the adverse action; (4) and that she was treated less favorably than similarly situated employees. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001).

The defendant assumes for the sake of the motion that Moore has satisfied the first elements of the prima facie case for discrimination. R. Doc. 55-1, p. 18. Therefore, the element in question is the fourth prong which requires a showing that the plaintiff was treated less favorably because of her status in protected class.

Defendant contends that Moore offered no information as to other employees, not in her protected class who were treated more favorably. However, in her EEO Investigative Affidavit, Moore does give information regarding comparator employees. R. Doc. 55-8, p. 16. Regarding her gender discrimination claim, Moore submits that Gabriel, black male, noncareer, City Carrier Assistant was injured on duty and restricted to four hours of work, but his work hours and duties were not changed by Penton.

Regarding her race discrimination claim, Moore states that Leres, a Caucasian limited duty carrier, is also medically restricted to a four-hour workday however her schedule and work duties were not changed, as Moore's were. *Id.* Therefore, the Court finds that plaintiff has established a prima facie case of race and gender discrimination.

Once the plaintiff establishes a prima facie case, a presumption of discrimination arises. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255. The burden then shifts to the defendant to articulate a legitimate non-discriminatory reason for its employment decision. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506; *McDonnell Douglas*, 411 U.S. 802. The employer

25

may succeed at this stage by proving that it would have taken the same action even had it not considered the unlawful factor.

The defendant's burden is one of production, not persuasion. In order to meet its burden of production, the defendant must clearly set forth, through the introduction of admissible evidence, "the reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, (1993) (*quoting* Texas *Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255 (1981)).

Defendant contends that the burden of establishing a legitimate, non-discriminatory reason for its actions has been satisfied.  Rec. Doc. 55-1, p. 19.  Furthermore, defendant contends that as Moore cannot establish that the reasons for defendant actions were pretext, therefore her race and gender discrimination claims should be dismissed.  *Id.*

Defendant submitted a declaration by Penton, the supervisor responsible for changing Moore's schedule. Penton states that the Moore's start time was changed because the Post Office had a need for her at 11 am. R. Doc. 55-9. However, Penton does not explain why there was a need for Moore at 11 a.m. versus her previous 8 a.m. start time.  Penton further makes no acknowledgment that she was aware that Moore's start time was based on her need to take medication at a certain time because the medication made her drowsy and unable to operate heavy machinery.  Penton further states that Moore would return from delivering mail on her route with parcels not being delivered. However, none of the reasons put forth by Penton allude to undue hardship by the defendant.

As an aside, Penton additionally alleges that Moore was combative with her supervisors and uncooperative in doing her assignment of delivering parcels, therefore it was decided to adjust her work duties to something more conducive to her medical restrictions. But it is unclear how or why Moore's uncooperative nature would justify the changing of the schedule as distinct from her medical limitations.

It is undisputed that Penton was aware of Moore's limitations and changed her schedule regardless of restrictions. Furthermore, the reasons given by Penton for the changing of Moore's schedule are conclusory rather than explanatory. A determination of whether these reasons are in fact legitimate and non-discriminatory, would require to the Court to consider the credibility of Penton's declaration, which is the job of the trier of fact. *See Wallace v. Seton Fam. of Hosps.*, 777 F. App'x 83, 89–90 (5th Cir. 2019) (holding that a fact issue regarding the proffered nondiscriminatory reasons for termination precluded summary judgment). Therefore, defendants' motion for summary of plaintiff race and sex discrimination claims is **DENIED.**

IV.    <u>**Conclusion**</u>

Accordingly,

**IT IS ORDERED** that the Defendant's **Motion for Summary Judgment** is **GRANTED. in part** and **DENIED in part.**

**IT IS FURTHERED ORDERED** that Plaintiff has abandoned her claims of intentional disability discrimination and retaliation in her second complaint therefore summary judgment on those claims is **GRANTED.**

**IT IS FURTHERED ORDERED** that summary judgment on Plaintiff's failure to accommodate claims in her first and third complaint is **DENIED.**

**IT IS FURTHERED ORDERED** that summary judgment on Plaintiff's disability discrimination claims in her first, third, and fourth complaint is **DENIED.**

**IT IS FURTHERED ORDERED** that summary judgment on Plaintiff's race and sex discrimination claims is **DENIED.**

New Orleans, Louisiana, this 17th day of February 2022.

**KAREN WELLS ROBY**

**UNITED STATES MAGISTRATE JUDGE**